# MILLER *v.* FLORIDA

No. 86–5344.   Argued April 21, 1987—Decided June 9, 1987

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Anthony Calvello* argued the cause for petitioner. With him on the briefs were *Richard L. Jorandby* and *Craig S. Barnard.*

*Joy B. Shearer,* Assistant Attorney General of Florida, argued the cause for respondent. With her on the brief was *Robert A. Butterworth,* Attorney General.*

JUSTICE O'CONNOR delivered the opinion of the Court.

At the time petitioner committed the crime for which he was convicted, Florida's sentencing guidelines would have resulted in a presumptive sentence of 3½ to 4½ years' imprisonment. At the time petitioner was sentenced, the revised guidelines called for a presumptive sentence of 5½ to 7 years in prison. The trial court applied the guidelines in effect at the time of sentencing and imposed a 7-year sentence. The question presented is whether application of these amended

---

*\*Gerald D. Stern* and *Alvin Bronstein* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

guidelines in petitioner's case is unconstitutional by virtue of the *Ex Post Facto* Clause.

## I

In 1983, the Florida Legislature enacted legislation replacing Florida's system of indeterminate sentencing with a sentencing guidelines scheme intended "to eliminate unwarranted variation in the sentencing process." Fla. Rule Crim. Proc. 3.701(b) (1983). See 1983 Fla. Laws, ch. 83–216. Under the sentencing statute, a guidelines commission was responsible for "the initial development of a statewide system of sentencing guidelines." Fla. Stat. § 921.001(1) (1983). Once the commission had made its recommendation, the Supreme Court of Florida was to develop a final system of guidelines. These guidelines were to become effective for crimes committed on or after October 1, 1983. Fla. Stat. § 921.001(4)(a) (1983).

The sentencing statute authorized the guidelines commission to "meet annually or at the call of the chairman to review sentencing practices and recommend modifications to the guidelines." Fla. Stat. § 921.001(3) (1983). Before the convening of the legislature each year, the commission was to make its recommendations regarding the need for changes in the guidelines. The Supreme Court of Florida then could revise the sentencing guidelines to conform to all or part of the commission's recommendations. The sentencing law provided, however, that such revisions would become effective "only upon the subsequent adoption by the Legislature of legislation implementing the guidelines as then revised." Fla. Stat. § 921.001(4)(b) (1983).

In accordance with this legislation, the Supreme Court of Florida developed sentencing guidelines that went into effect on October 1, 1983. See *In re Rules of Criminal Procedure (Sentencing Guidelines)*, 439 So. 2d 848 (1983). Under the scheme, offenses were grouped into nine "offense categories" (*e. g.*, "robbery" and "sexual offenses"). A single sentencing

"scoresheet" would be prepared based on the defendant's "primary offense," defined as the crime "with the highest statutory degree" at the time of conviction. Fla. Rule Crim. Proc. 3.701(d) (1983). In scoring a defendant's guidelines sentence, points would be assigned based on the primary offense, additional offenses at the time of conviction, prior record, legal status at the time of the offense, and victim injury. The defendant's total point score then would be compared to a chart for that offense category, which provided a presumptive sentence for that composite score.

The presumptive sentence range was "assumed to be appropriate for the composite score of the offender." Fla. Rule Crim. Proc. 3.701(d)(8) (1983). Within the recommended range, the sentencing judge had discretion to fix the sentence "without the requirement of a written explanation." *Ibid.* If the sentencing judge wished to depart from the guideline range, however, the judge had to give clear and convincing reasons in writing for doing so:

> "Departures from the presumptive sentence should be avoided unless there are clear and convincing reasons to warrant aggravating or mitigating the sentence. Any sentence outside of the guidelines must be accompanied by a written statement delineating the reasons for the departure. Reasons for deviating from the guidelines shall not include factors relating to either instant offense or prior arrests for which convictions have not been obtained." Fla. Rule Crim. Proc. 3.701(d)(11) (1983).

The "clear and convincing" standard was construed as requiring reasons "of such weight as to produce in the mind of the judge a firm belief or conviction, without hesitancy, that departure is warranted." *State* v. *Mischler*, 488 So. 2d 523, 525 (Fla. 1986). Only those sentences that fall outside the guidelines' range are subject to appellate review. See Fla. Stat. § 921.001(5) (1983).

Petitioner was convicted in August 1984 on counts of sexual battery with slight force, a second-degree felony, Fla.

Stat. § 794.011(5) (Supp. 1984); burglary with an assault, a felony of the "first degree punishable by . . . life," Fla. Stat. § 810.02 (1983); and petit theft, a misdemeanor, Fla. Stat. § 812.014(2)(c) (1983). On April 25, 1984, when these offenses were committed, the sentencing guidelines adopted October 1, 1983, were still in effect. On May 8, 1984, however, the Supreme Court of Florida proposed several revisions to the sentencing guidelines. See *Florida Bar: Amendment to Rules of Criminal Procedure (3.701, 3.988—Sentencing Guidelines)*, 451 So. 2d 824 (1984). In June 1984 the Florida Legislature adopted the recommended changes, see 1984 Fla. Laws, ch. 84–328, and the legislation implementing the revised guidelines became effective July 1, 1984. When petitioner was sentenced on October 2, 1984, therefore, these revised sentencing guidelines were the guidelines then in effect.

Only two changes made in the revised guidelines are relevant here. First, the guidelines changed the definition of "primary offense" from the offense with "the highest statutory degree," to the offense which results in "the most severe sentence range." See 451 So. 2d, at 824, n. This changed petitioner's primary offense from burglary with assault—the offense with the higher statutory degree—to sexual battery. Petitioner does not argue here that the new definition itself changed his presumptive sentence. See Tr. of Oral Arg. 6. As a result of the new definition, however, petitioner was affected by another change in the revised guidelines law: a 20% increase in the number of primary offense points assigned to sexual offenses. The Supreme Court of Florida, in its comments accompanying the revised guidelines, described the change: "The revision increases the primary offense points by 20% and will result in both increased rates and length of incarceration for sexual offenders." 451 So. 2d, at 824, n. As a result of the point increase, petitioner's total point score jumped to a presumptive sentence of 5½ to 7 years. See App. 12.

At petitioner's sentencing hearing on October 2, 1984, the State contended that the revised guidelines should apply in determining petitioner's sentence. Alternatively, the State argued that if the sentencing judge applied the earlier guidelines, he should depart from the guidelines' range and impose a 7-year sentence. *Id.*, at 8–9. The sentencing judge, rejecting petitioner's *ex post facto* argument, ruled that the revised guidelines should apply. Concluding that he would "stay within the new guidelines," the judge imposed a 7-year term of imprisonment for the sexual assault count. *Id.*, at 10. Petitioner received a concurrent 7-year sentence on the burglary count, and time served on the misdemeanor charge. *Id.*, at 6, 11.

On appeal, the Florida District Court of Appeal, relying on this Court's decision in *Weaver* v. *Graham,* 450 U. S. 24 (1981), vacated petitioner's sentence and remanded for resentencing in accordance with the sentencing guidelines in effect at the time the offense was committed. 468 So. 2d 1018 (1985). In remanding the case, the court noted that "the same sentence is possible if clear and convincing reasons for departure from the then applicable guidelines are stated in writing." *Ibid.*

The Supreme Court of Florida reversed. 488 So. 2d 820 (1986). In a summary opinion, the court concluded that its decision in *State* v. *Jackson,* 478 So. 2d 1054 (1985), established that "the trial court may sentence a defendant pursuant to the guidelines in effect at the time of sentencing." 488 So. 2d, at 820. In *Jackson,* the Supreme Court of Florida had emphasized that "the presumptive sentence established by the guidelines does not change the statutory limits of the sentence imposed for a particular offense." 478 So. 2d, at 1056. On that basis, it had concluded that a modification in sentencing guidelines procedure was "merely a procedural change, not requiring the application of the ex post facto doctrine" under *Dobbert* v. *Florida,* 432 U. S. 282 (1977). 478 So. 2d, at 1056.

We granted certiorari, 479 U. S. 960 (1986), and now reverse.

## II

Article I of the United States Constitution provides that neither Congress nor any State shall pass any "ex post facto Law." See Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. Our understanding of what is meant by *ex post facto* largely derives from the case of *Calder* v. *Bull*, 3 Dall. 386 (1798), in which this Court first considered the scope of the *ex post facto* prohibition. In *Calder*, Justice Chase, noting that the expression *"ex post facto"* "had been in use long before the revolution," *id.*, at 391, summarized his understanding of what fell "within the words and the intent of the prohibition":

> "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Id.*, at 390 (emphasis omitted).

Accord, *Dobbert* v. *Florida, supra*, at 292, quoting *Beazell* v. *Ohio*, 269 U. S. 167, 169–170 (1925).

Justice Chase explained that the reason the *Ex Post Facto* Clauses were included in the Constitution was to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation. See 3 Dall., at 389. Justices Paterson and Iredell, in their separate opinions in *Calder*, likewise emphasized that the Clauses were aimed at preventing legislative abuses. See *id.*, at 396 (Paterson, J.); *id.*, at 399–400 (Iredell, J.). See also *Malloy* v. *South Carolina*, 237 U. S. 180, 183 (1915); *James* v. *United States*, 366

U. S. 213, 247, n. 3 (1961) (separate opinion of Harlan, J.). In addition, the Justices' opinions in *Calder*, as well as other early authorities, indicate that the Clauses were aimed at a second concern, namely, that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver* v. *Graham*, *supra*, at 28–29. See *Calder* v. *Bull*, 3 Dall., at 388 (Chase, J.); *id.*, at 396 (Paterson, J.); 1 W. Blackstone, Commentaries *46. Thus, almost from the outset, we have recognized that central to the *ex post facto* prohibition is a concern for "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U. S., at 30.

Our test for determining whether a criminal law is *ex post facto* derives from these principles. As was stated in *Weaver*, to fall within the *ex post facto* prohibition, two critical elements must be present: first, the law "must be retrospective, that is, it must apply to events occurring before its enactment"; and second, "it must disadvantage the offender affected by it." *Id.*, at 29. We have also held in *Dobbert* v. *Florida*, *supra*, that no *ex post facto* violation occurs if a change does not alter "substantial personal rights," but merely changes "modes of procedure which do not affect matters of substance." *Id.*, at 293. See *Beazell* v. *Ohio*, *supra*, at 170–171. Respondent contends that the revised sentencing law is neither impermissibly retrospective, nor to petitioner's disadvantage; respondent also contends that the revised sentencing law is merely a procedural change. We consider these claims in turn.

A law is retrospective if it "changes the legal consequences of acts completed before its effective date." *Weaver*, *supra*, at 31. Application of the revised guidelines law in petitioner's case clearly satisfies this standard. Respondent nevertheless contends that the *ex post facto* concern for retrospective laws is not violated here because Florida's sen-

tencing statute "on its face provides for continuous review and recommendation of changes to the guidelines." Brief for Respondent 27–28. Relying on our decision in *Dobbert*, respondent argues that it is sufficient that petitioner was given "fair warning" that he would be sentenced pursuant to the guidelines then in effect on his sentencing date. Brief for Respondent 28.

In our view, *Dobbert* provides scant support for such a pinched construction of the *ex post facto* prohibition. In *Dobbert*, the capital sentencing statute in effect at the time the murders took place later was held to be invalid. In rejecting the defendant's argument that imposition of the death penalty therefore was a change in punishment from the punishment "in effect" when the crimes were committed, the Court concluded that *ex post facto* concerns were satisfied because the statute on the books at the time Dobbert committed the crimes warned him of the specific punishment Florida prescribed for first-degree murders. See 432 U. S., at 298. Here, by contrast, the statute in effect at the time petitioner acted did not warn him that Florida prescribed a 5½- to 7-year presumptive sentence for that crime. Petitioner simply was warned of the obvious fact that the sentencing guidelines law—like any other law—was subject to revision. The constitutional prohibition against *ex post facto* laws cannot be avoided merely by adding to a law notice that it might be changed.

It is "axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert, supra,* at 294. Looking only at the change in primary offense points, the revised guidelines law clearly disadvantages petitioner and similarly situated defendants. See 451 So. 2d, at 824, n. (the purpose and effect of the change in primary offense points was to "increas[e] [the] rates and length of incarceration for sexual offenders"). Considering the revised guidelines law as a whole does not change this result. Unlike *Dobbert,* where we found that the "totality of the procedural changes

wrought by the new statute . . . did not work an onerous application of an *ex post facto* change," 432 U. S., at 296–297, here respondent has not been able to identify any feature of the revised guidelines law that could be considered ameliorative.

Respondent maintains that the change in guidelines laws is not disadvantageous because petitioner "cannot show definitively that he would have gotten a lesser sentence." Tr. of Oral Arg. 29. This argument, however, is foreclosed by our decision in *Lindsey* v. *Washington*, 301 U. S. 397 (1937). In *Lindsey*, the law in effect at the time the crime was committed provided for a maximum sentence of 15 years, and a minimum sentence of not less than six months. At the time Lindsey was sentenced, the law had been changed to provide for a mandatory 15-year sentence. Finding that retrospective application of this change was *ex post facto*, the Court determined that "we need not inquire whether this is technically an increase in the punishment annexed to the crime," because "[i]t is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term." *Id.*, at 401–402. Thus, *Lindsey* establishes "that one is not barred from challenging a change in the penal code on *ex post facto* grounds simply because the sentence he received under the new law was not more onerous than that which he might have received under the old." *Dobbert, supra,* at 300.

Petitioner plainly has been "substantially disadvantaged" by the change in sentencing laws. To impose a 7-year sentence under the old guidelines, the sentencing judge would have to depart from the presumptive sentence range of 3½ to 4½ years. As a result, the sentencing judge would have to provide clear and convincing reasons in writing for the departure, on facts proved beyond a reasonable doubt, and his determination would be reviewable on appeal. By contrast, because a 7-year sentence is within the presumptive range

under the revised law, the trial judge did not have to provide any reasons, convincing or otherwise, for imposing the sentence, and his decision was unreviewable. Thus, even if the revised guidelines law did not "technically . . . increase . . . the punishment annexed to [petitioner's] crime," *Lindsey, supra,* at 401, it foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law. Petitioner therefore was "substantially disadvantaged" by the retrospective application of the revised guidelines to his crime.

Finally, even if a law operates to the defendant's detriment, the *ex post facto* prohibition does not restrict "legislative control of remedies and modes of procedure which do not affect matters of substance." *Dobbert,* 432 U. S., at 293. Hence, no *ex post facto* violation occurs if the change in the law is merely procedural and does "not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt." *Hopt* v. *Utah,* 110 U. S. 574, 590 (1884). See *Dobbert, supra,* at 293–294 ("The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime"). On the other hand, a change in the law that alters a substantial right can be *ex post facto* "even if the statute takes a seemingly procedural form." *Weaver,* 450 U. S., at 29, n. 12.

Although the distinction between substance and procedure might sometimes prove elusive, here the change at issue appears to have little about it that could be deemed procedural. The 20% increase in points for sexual offenses in no wise alters the method to be followed in determining the appropriate sentence; it simply inserts a larger number into the same equation. The comments of the Florida Supreme Court acknowledge that the sole reason for the increase was to punish sex offenders more heavily: the amendment was intended to,

and did, increase the "quantum of punishment" for category 2 crimes.   See 451 So. 2d, at 824, n.

Respondent objects that it is misleading to view the change in the revised guidelines apart from the sentencing scheme as a whole.   Relying largely on decisions by the Courts of Appeals sustaining the United States Parole Commission's guidelines against *ex post facto* claims, respondent urges that the revised guidelines "merely guide and channel" the sentencing judge's discretion.   Brief for Respondent 35.   See, *e. g., Wallace* v. *Christensen*, 802 F. 2d 1539 (CA9 1986) (en banc); *Yamamoto* v. *United States Parole Comm'n*, 794 F. 2d 1295 (CA8 1986); *Dufresne* v. *Baer*, 744 F. 2d 1543 (CA11 1984), cert. denied, 474 U. S. 817 (1985); *Warren* v. *United States Parole Comm'n*, 212 U. S. App. D. C. 137, 659 F. 2d 183 (1981), cert. denied, 455 U. S. 950 (1982).   See also *Portley* v. *Grossman*, 444 U. S. 1311 (1980) (REHNQUIST, J., in chambers).   Invoking the reasoning of these cases, respondent contends that an increase in the guidelines sentence operates only as a "procedural guidepost" for the exercise of discretion within the same statutorily imposed sentencing limits.

We find the federal parole guidelines cases inapposite. The courts that have upheld the retrospective application of federal parole guidelines have articulated several reasons why the *ex post facto* prohibition does not apply.   The majority of these courts have held that the federal parole guidelines are not "laws" for purposes of the *Ex Post Facto* Clause. See, *e. g., Wallace* v. *Christensen, supra,* at 1553–1554 (citing cases).   Other courts have found that the guidelines merely rationalize the exercise of statutory discretion, and that retrospective application of the guidelines thus does not violate the *Ex Post Facto* Clause.   See, *e. g., Warren* v. *United States Parole Comm'n, supra,* at 149, 659 F. 2d, at 195; *Portley* v. *Grossman, supra,* at 1312.   Finally, some of the cases have held that retrospective application of the guidelines does not result in a more onerous punishment and

thus does not constitute an *ex post facto* violation. See, *e. g.*, *Dufresne* v. *Baer, supra,* at 1549–1550.

None of the reasons given in the federal parole cases even arguably applies here. First, the revised sentencing law is a law enacted by the Florida Legislature, and it has the force and effect of law. Cf. *Williams* v. *State,* 500 So. 2d 501, 503 (Fla. 1986) (departure sentence not supported by clear and convincing reasons was erroneous even though defendant consented, because "a defendant cannot . . . confer on the court the authority to impose an illegal sentence"). Nor do the revised guidelines simply provide flexible "guideposts" for use in the exercise of discretion: instead, they create a high hurdle that must be cleared before discretion can be exercised, so that a sentencing judge may impose a departure sentence only after first finding "clear and convincing reasons" that are "credible," "proven beyond a reasonable doubt," and "not . . . a factor which has already been weighed in arriving at a presumptive sentence." See *State* v. *Mischler,* 488 So. 2d, at 525; *Williams* v. *State,* 492 So. 2d 1308, 1309 (Fla. 1986). Compare S. Rep. No. 98–225, p. 38 (1983) (describing the "unfettered discretion" of the Parole Commission under the system of parole guidelines). Finally, the revised guidelines directly and adversely affect the sentence petitioner receives. Thus, this is not a case where we can conclude, as we did in *Dobbert,* that "[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute." 432 U. S., at 294.

## III

The law at issue in this case, like the law in *Weaver,* "makes more onerous the punishment for crimes committed before its enactment." *Weaver, supra,* at 36. Accordingly, we find that Florida's revised guidelines law, 1984 Fla. Laws, ch. 84–328, is void as applied to petitioner, whose

crime occurred before the law's effective date. We reverse the judgment of the Supreme Court of Florida, and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*