73 F.3d 362
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Owen HARRISON, Defendant-Appellant.
 No. 95-3188.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1996.
 
 Before: KENNEDY, GUY and RYAN, Circuit Judges.
 Per Curiam.
 
 
 1
 The defendant, Richard Harrison, while serving a three-year term of supervised release, violated several of the release conditions. As a result, a violation petition was filed and, after two hearings, Harrison was sentenced to 16 months incarceration.
 
 
 2
 On appeal, Harrison argues that the use by the court of the 1994 version of 18 U.S.C. Sec. 3583(g) violated the Ex Post Facto Clause of the Constitution and resulted in a longer period of incarceration than was allowable. He also argues that, even if the court properly sentenced him to 16 months imprisonment, the failure of the court to consider the non-binding policy statement contained in chapter 7 of the sentencing guidelines requires this matter to be remanded for resentencing.[1]
 
 
 3
 Our review of these proceedings convinces us that no error occurred and we affirm.
 
 I.
 
 4
 We need spend little time on defendant's ex post facto argument, since it is clear that under either the 1988 or the 1994 version of the applicable statute, a sentence of 16 months was permissible. Under the 1988 version of 18 U.S.C. Sec. 3583(g), a minimum sentence of 12 months would have been required. Under the 1994 version, no minimum is required, but the maximum term of imprisonment would have been two years. Thus, Harrison has not been disadvantaged. Miller v. Florida, 482 U.S. 423 (1987).
 
 II.
 
 5
 In resentencing an offender after revocation of supervised release, 18 U.S.C. Sec. 3583(e) directs that the court consider, inter alia, the provisions of 18 U.S.C. Sec. 3553(a)(4)(B). Section 3553(a)(4)(B) provides in relevant part:
 
 
 6
 The court, in determining the particular sentence to be imposed, shall consider--
 
 
 7
 ....
 
 
 8
 (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code[.]
 
 In a related vein, Sec. 3553(c) provides:
 
 9
 (c) Statement of reasons for imposing a sentence.--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--
 
 
 10
 (2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described.
 
 
 11
 At sentencing, the following colloquy occurred:
 
 
 12
 THE COURT: I have already revoked Mr. Harrison's supervised release, and it's the Court's determination at this point in time that remand to the Bureau of Prisons and the custody of the marshals is appropriate for a term of 16 months.
 
 
 13
 MR. HOBSON: Your Honor, you're departing upward from the guidelines?
 
 
 14
 THE COURT: It's my understanding he was on three years of supervised release. I could reincarcerate him for anything up to three years.
 
 
 15
 MR. HOBSON: My understanding was the guidelines were five to 11 months.
 
 
 16
 THE COURT: Miss Ankrom?
 
 
 17
 MS. ANKROM: Your Honor, the guideline range is five to 11 months, that's based on Grade C violations, criminal history Category III. Those are proposed guidelines.
 
 
 18
 As far as the statute is concerned, since he was a Class C felony, he can serve a term of imprisonment up to two years.
 
 
 19
 THE COURT: The guidelines of which Mr. Hobson is speaking are proposed guidelines that are not binding at this point in time; correct?
 
 
 20
 MS. ANKROM: That's true, Your Honor.
 
 
 21
 (App. 60.) The trial judge then proceeded to impose the 16-month sentence.
 
 
 22
 If the matter had ended there, we would be inclined to remand for resentencing because it would be less than clear that the judge had given adequate consideration to the lesser sentence that would have resulted if the policy statements were followed.[2] After the judge announced her sentencing decision, however, the defendant spoke to the court at length in what amounted to a plea for reconsideration of the sentence. During this discourse, the defendant outlined various reasons in mitigation of his conduct. The court considered defendant's remarks and asked further questions of the defendant. When the discussion ended, the trial judge stated:
 
 
 23
 THE COURT: Mr. Harrison, you were on supervised release. When I sentenced you, I told you there were 14 specific conditions of supervised release that you would have to follow, and when I took your plea, I told you, if you don't conform to all of the terms and conditions of the supervised release, your supervised release can be revoked, and you can be sent to prison for up to the full time of the supervised release, without any credit for any time already served. And you had special terms and conditions on your supervised release.
 
 
 24
 Ms. Ankrom's [the probation officer] job is to see to it that you comply with all of them, not just the ones you think are convenient, not just the ones you like. I understand you're making an effort. But it's an all or nothing proposition. You either conform to all the terms and conditions, or your supervised release is revoked.
 
 
 25
 You have burned a lot of bridges behind you. Going back to prison is a price you're going to have to pay for that. I hope you can get another good job, and I hope you can straighten your life out. But there are limits. And I have imposed the sentence, and my mind is not changed.
 
 
 26
 (App. 64-65.)
 
 
 27
 In evaluating this exchange, we note that sentencing took place at the second hearing that was held on this matter. The first hearing was adjourned to see what alternatives to incarceration might be appropriate. Unfortunately, the defendant's conduct between the two hearing dates did not provide any support for a sentence other than incarceration. At the start of the adjourned hearing, the assistant United States attorney stated to the court:
 
 
 28
 MR. SPARTIS: Your Honor, this case was continued from February 8th. On that date the Court revoked Mr. Harrison's supervised release and asked the probation office to explore alternatives to prison.
 
 
 29
 After conferring with Miss Ankrom this morning, it's my understanding that Mr. Harrison does not have a job, and did not report to counseling as required, I believe last week, Monday. It is the government's recommendation that the supervised release be revoked and that he be imprisoned.
 
 
 30
 (App. 54.) The court then asked to hear from the probation officer:
 
 
 31
 MS. ANKROM: Yes, Your Honor, I would like to provide an update on Mr. Harrison. After the hearing last week I met with the offender and instructed him to report to my office on Mondays and Fridays, to continue to take counseling, which was scheduled for Mondays, to submit any requested urinalysis specimens and attend AA meetings.
 
 
 32
 After meeting with him, I instructed him to submit a urinalysis specimen. He did submit a specimen; however, it was a very small quantity, and it's questionable whether there was enough there to test. It was sent off to our lab, and we haven't received any word from that.
 
 
 33
 Mr. Harrison informed the officer that was collecting the urine that he had to leave because he had a taxi waiting, and he would be in on Friday. Mr. Harrison did not report to our office on Friday, as instructed.
 
 
 34
 On February 13th, which was Monday, he reported to our office at 3:45 p.m., and I had left word with my secretary that Mr. Harrison was to submit a urine. I made arrangements with pretrial to collect that urine, so that we could get quick results on that specimen. He did stay and submit that urine. His counseling session was at 4:00 o'clock. I kind of question why the offender reported to our office at quarter to 4:00, when his counseling session was scheduled at 4:00.
 
 
 35
 I did speak with his employer, and learned that Mr. Harrison was working Tuesdays through Fridays. He took all day off Monday to report to our office and to attend his counseling session at 4:00. So on February 13th, when he reported to our office at 3:45, he actually didn't work that day. He could have come in earlier, taken care of reporting to our office, and then went on to counseling without a time conflict.
 
 
 36
 I called Maryhaven to confirm that he attended his session Monday, and he was not signed in on their log. And according to their records, he was not there. Now, his counselor is on vacation, so I couldn't confirm with her whether he showed up, and she wasn't able to meet with him. But he wasn't signed in.
 
 
 37
 Mr. Harrison has not returned to his job at Red Leggs since February 8th, which was the day previous to his last revocation hearing. I spoke with the employer this morning. I confirmed that Mr. Harrison did pick up his last paycheck, and made no indication whether he could continue employment or not. I question whether, if the Court decided to continue his supervision or modify it in such a way that he could continue to work, if the employer would consider hiring him.
 
 
 38
 The employer indicated he will think that over. He was somewhat concerned because Richard Harrison was a little less than honest about his having to take a full day off on Mondays. The employer was under the impression that he needed a full day off to attend counseling on Mondays. He thought it was a pretty long session on Monday.
 
 
 39
 When he found out that the session was at 4:00 p.m., he wasn't pleased with knowing that the offender could have worked at least part of that day. So he said he would need to reconsider, because he felt the offender was a little less than honest.
 
 
 40
 (App. 56-58.)
 
 
 41
 Under these circumstances, the court had sufficient justification to impose a sentence in excess of that recommended by the policy statement. It is also clear that the trial judge concluded the first hearing with the expectation that alternatives to incarceration might be appropriate. It was only after learning of the defendant's most recent conduct that the court decided on a 16-month sentence. Although the court did not say "I have considered the policy statement and depart upward for the following reasons," such literalism is not required. The reasons behind the sentence imposed are clear and satisfy the intent of the Sentencing Commission and Congress in this regard.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 Defendant has now abandoned his original argument that the policy statements contained in chapter 7 of the sentencing guidelines were binding on the court. See U.S.S.G. Sec. 7B1.4; United States v. West, 59 F.3d 32, 33 (6th Cir.1995) (policy statements in Chapter 7 are merely advisory)
 
 
 [2]
 Following the policy statements would have resulted in a 12-month sentence