690 S.E.2d 565

**The STATE, Respondent,**

v.

**Timothy Edward STAHLNECKER, Appellant.**

**No. 26782.**

Supreme Court of South Carolina.

Heard Oct. 20, 2009.
Decided March 1, 2010.

610

612

Appellate Defender LaNelle C. DuRant, of SC Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert Mills Ariail, of Greenville, for Respondent.

Chief Justice TOAL.

Because Timothy Edward Stahlnecker (Appellant) challenges the constitutionality of a state law, this Court reviews this matter pursuant to Rule 203(d)(1)(A), SCACR. On February 21, 2006 a Greenville County Grand Jury indicted Appellant on the charges of first degree criminal sexual conduct (CSC) with a minor and lewd act upon a child. Appellant went to trial and the jury returned guilty verdicts on both charges. Appellant was sentenced to twenty years on the CSC charge and fifteen years on the lewd act charge, the sentences to run concurrently. We affirm.

## Facts/Procedural History

Appellant lived in Greenville County with his wife, their two-year-old daughter, his wife's seven-year-old daughter (Victim), and his wife's five-year-old son from another previous marriage. Around four o'clock in the afternoon on November 6, 2005, Victim was left home alone with Appellant.

At trial, Victim testified that she went to the upstairs bedroom and sat next to Appellant. Victim recalled that Appellant removed her pants and touched her vagina with his hand. Victim also testified that Appellant performed oral sex on Victim and touched her vagina with his penis. Victim stated she tried to push Appellant away during the incident. Appellant stopped because Victim's mother returned home.

Victim's mother testified that when she returned home, she noticed Victim had different clothes on and told her to change her clothes. Victim's mother then went to check on Victim and found her lying in a fetal position on the bed. She testified Victim said she just wanted to go to bed, so she started to undress Victim in order to put on her pajamas. She stated that as she did, she discovered the inside of Victim's panties were wet and a hair was stuck to Victim's "private area." She then asked Victim if Appellant had been touching her. Victim's mother testified that Victim responded by nodding her head yes and crying. Defense counsel objected on grounds of hearsay. The trial judge overruled the objection.

Victim's mother took Victim to the hospital where Victim was interviewed by Ty Bracken, a sex crimes investigator, in the presence of Victim's mother and grandmother. Prior to trial, the State requested a ruling on the introduction of Victim's interview with Bracken pursuant to S.C.Code Ann. § 17–23–175 (Supp.2008). Bracken testified *in camera* that she reported to the hospital and met with Victim. Bracken stated she did not have recording equipment with her because it was in the middle of the night and the hospital did not have recording equipment in the room. Bracken testified she did not conduct a follow-up interview because she received a very clear disclosure from Victim and did not want Victim to have to perform a second interview. Bracken noted that getting the statement from Victim was an emergency-type situation. Bracken took notes of Victim's statements and specifically noted direct quotations from Victim. At the conclusion of the hearing, defense counsel moved to exclude Victim's statement to Bracken. Defense counsel argued section 17–23–175 violated the *ex post facto* laws and Appellant's right to confrontation. The trial judge denied the motion to suppress Victim's statement to Bracken.

At trial, Bracken testified Victim told her that when her mother left that afternoon, Appellant called her to come upstairs, and when she went into the bedroom Appellant was naked on the bed. Bracken then stated Victim said Appellant kissed her vagina with his mouth and touched under her panties with his penis. Lastly, Bracken testified Victim told her this was not the first time this happened.

At trial, the State called Victim's *guardian ad litem* (GAL) as a witness. Prior to the GAL's testimony, defense counsel asked for a ruling from the court as to whether the GAL could testify as to any incriminating statements made by Appellant to the GAL during the GAL's interview of Appellant. Defense counsel argued the GAL was a state actor and allowing the GAL to testify against Appellant violated his Sixth Amendment right to counsel. The trial court allowed the GAL to testify. The GAL testified Appellant admitted to her the police reports of the incident were accurate and Victim initiated the incident.[1]

## ISSUES

I.   Did the trial court err in admitting the unrecorded out-of-court statement of Victim to Bracken under section 17–23–175?

II.  Did the trial court err in admitting Appellant's admission to the GAL?

III. Did the trial court err in admitting the testimony of Victim's mother concerning Victim's statements to her mother regarding the sexual assault?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only. We are bound by the trial court's factual

---

1. The following evidence was also admitted at trial: (a) Deputy Dustin Woodall testified Victim's mother told him Appellant sexually assaulted Victim in their home; (b) Deputy Matthew Owens testified Appellant was read his warrant at the detention center and Appellant admitted that he did what the warrant stated he did; (c) the crotch of Victim's panties tested positive for saliva; (d) a signed statement of Appellant admitting he performed the acts on Victim was admitted for impeachment evidence; and (e) a letter from Appellant to Victim's mother apologizing and asking for forgiveness.

findings unless they are clearly erroneous." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citations omitted). "This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." *Id.* at 6, 545 S.E.2d at 829. "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001).

## ANALYSIS

## I.  Investigator Bracken's Testimony

Appellant argues the trial court erred in admitting the out-of-court statement of Victim to Bracken under section 17–23–175 because it violated the *ex post facto* laws, violated the rule against hearsay, and was prejudicial to Appellant.  We find that Appellant's hearsay and prejudice arguments are not preserved for review.  We also find that section 17–23–175 does not violate the *ex post facto* laws.

### A.  Issue Preservation

An objection must be made on a specific ground. *State v. Nichols*, 325 S.C. 111, 120, 481 S.E.2d 118, 123 (1997). For an issue to be properly preserved it has to be raised to and ruled on by the trial court.  *State v. Wise*, 359 S.C. 14, 21, 596 S.E.2d 475, 478 (2004).  A party need not use the exact name of a legal doctrine in order for the issue to be preserved, but it must be clear the argument has been presented on that ground.  *State v. Russell*, 345 S.C. 128, 132, 546 S.E.2d 202, 204 (Ct.App.2001).

At trial, defense counsel argued Victim's statement to Bracken was inadmissible because application of section 17–23–175 violated the *ex post facto* laws and his right to confrontation.  However, defense counsel did not contend Victim's statement constituted impermissible hearsay, that it was unduly prejudicial because it was inconsistent with Victim's trial testimony, or that the State failed to comply with section 17–

23–175.   Hence, the only issue preserved on appeal is whether section 17–23–175 violated the *ex post facto* laws.[2]

## B.   S.C.Code Ann. § 17–23–175

■■■■   "[T]he reason the *Ex Post Facto* Clauses were included in the Constitution was to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation." *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).   An *ex post facto* law "imposes a punishment for an act which was not punishable at the time it was committed;  or imposes additional punishment to that then prescribed;  or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required." *Cummings v. Missouri,* 71 U.S. 277, 278, 4 Wall. 277, 18 L.Ed. 356 (1866).   "[I]n order for a law to fall within the *ex post facto* prohibition, two critical elements must be present:  (1) the law must be retrospective so as to apply to events occurring before its enactment, and (2) the law must disadvantage the offender affected by it." *State v. Huiett,* 302 S.C. 169, 171, 394 S.E.2d 486, 487 (1990) (citation omitted).

The United States Supreme Court has set forth four general categories of law that are violative of the United States Constitution's *ex post facto* clause:

> 1st.   Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal;  and punishes such action.   2nd.   Every law that aggravates a crime, or makes it greater than it was, when committed.   3rd.   Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.   4th.   Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798).

■■■■   "[I]n order for the *ex post facto* clause to be applicable, the statute or the provision in question must be criminal or penal in purpose and nature." *Huiett,* 302 S.C. at

---

**2.**   While defense counsel argued below the application of section 17–23–175 violated his right to confrontation, Appellant failed to raise that issue on appeal.

172, 394 S.E.2d at 487. A change in the law does not violate the *ex post facto* clause if it merely affects a mode of procedure and does not alter substantial personal rights. *Id.* at 171, 394 S.E.2d at 487 (citation omitted). "Even though a procedural change may have a detrimental impact on a defendant, a mere procedural change which does not affect substantial rights is not *ex post facto.*" *Id.* at 171–72, 394 S.E.2d at 487.

The United States Supreme Court has held changes in laws that made previously inadmissible evidence admissible did not violate the *ex post facto* clause. *See Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (holding a law admitting previously inadmissible handwriting samples did not violate *ex post facto* clause); *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (holding admission of convicted felon's testimony, which was inadmissible at the time the crime was committed, did not violate *ex post facto* clause). Furthermore, other jurisdictions that have considered the admission of hearsay statements of child victims have reached the same conclusion. *See State v. Stevens,* 757 S.W.2d 229, 232 (Mo.Ct.App.1988) ("[A] change in a statute after the alleged crime which allowed the hearsay statements of a child victim of sexual abuse to be admitted against an accused at trial when previously such a statement was inadmissible was not a prohibited *ex post facto* law because it simply authorized the introduction of additional evidence of guilt."); *accord Cogburn v. State,* 292 Ark. 564, 732 S.W.2d 807 (1987); *People v. Koon,* 724 P.2d 1367 (Colo.Ct.App.1986).

■ Section 17–23–175 allows an out-of-court statement of a child under twelve to be admissible under certain circumstances.[3] In interpreting section 17–23–175, the court of

---

3. The pertinent part of section 17–23–175 provides:

(F) Out-of-court statements made by a child in response to questioning during an investigative interview that is visually and auditorily recorded will always be given preference. If, however, an electronically unrecorded statement is made to a professional in his professional capacity by a child victim or witness regarding an act of sexual assault or physical abuse, the court may consider the statement in a hearing outside the presence of the jury to determine:

(1) the necessary visual and audio recording equipment was unavailable;

appeals concluded the section was not penal in nature but rather "deals with procedural, evidentiary matters." *State v. Bryant*, 382 S.C. 505, 512, 675 S.E.2d 816, 820 (Ct.App.2009). Furthermore, section 17–23–175 does not fall into one of the four categories set forth in *Calder*. *See id.* The amount or type of evidence required at the time of the commission of the offense in order to convict the offender is not altered by section 17–23–175. Because section 17–23–175 merely authorizes the introduction of new evidence and does not alter substantial personal rights, it does not violate the *ex post facto* laws. Therefore, the trial court committed no error in allowing Bracken's testimony pursuant to section 17–23–175.

## II. Appellant's Admission to the GAL

Appellant argues the trial court erred in allowing the admission of Appellant's statement to the GAL because it violated his Sixth Amendment right to counsel. We disagree.

The Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *U.S. v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie County, Tex.*, —— U.S. ——, 128 S.Ct. 2578, 2592, 171 L.Ed.2d 366, 383 (2008). In *Massiah v. U.S.*, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) the United States Supreme Court held "that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." That language has given rise to a two-part test to

---

(2) the circumstances surrounding the making of the statement;

(3) the relationship of the professional and the child; and

(4) if the statement possesses particularized guarantees of trustworthiness.

After considering these factors and additional factors the court deems important, the court will make a determination as to whether the statement is admissible pursuant to the provisions of this section.

determine whether a violation of the Sixth Amendment has occurred: "[t]o find a Sixth Amendment violation, the statements in question must have been (1) deliberately elicited (2) by a government agent." *U.S. v. Li*, 55 F.3d 325, 328 (7th Cir.1995); *see also Creel v. Johnson*, 162 F.3d 385, 393 (5th Cir.1998); *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991).

"There is, by necessity, no bright-line rule for determining whether an individual is a government agent for purposes of the sixth amendment right to counsel." *Depree*, 946 F.2d at 793–94. Whether someone is a government agent for purposes of Sixth Amendment jurisprudence depends on the facts and circumstances of each case. *Id.* at 794 (citation omitted). However, "[a]t a minimum ... there must be some evidence that an agreement, express or implied, between the individual and a government official existed at the time the elicitation takes place." *Id.* (citation omitted). Regarding the "deliberate elicitation" prong, the Supreme Court has explained that "the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann v. Wilson*, 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

In the present case, Appellant contends the GAL was a state actor because she was appointed by the court. However, the record clearly indicates the GAL was not acting as a government agent for purposes of the Sixth Amendment right to counsel. There was no express or implied agreement between the GAL and a government official involved in the prosecution of Appellant's case. The GAL was meeting with Appellant to see that Victim received the social services she needed. In *State v. Sprouse*, 325 S.C. 275, 284, 478 S.E.2d 871, 876 (Ct.App.1996), the court of appeals found that a case manager for the Department of Social Services (DSS) was not acting as an agent of law enforcement and, therefore, the requirements of *Miranda* did not apply. Similarly, the GAL in this case was an employee of DSS appointed by the family court and in no way a government agent for purposes of the Sixth Amendment right to counsel.

■ Additionally, the GAL did not deliberately elicit Appellant's incriminating remarks. When the GAL met with Appellant, she told him that she did not want to discuss the details of the sexual assault. However, Appellant voluntarily made incriminating statements to the GAL during the interview. In no way did the GAL take any action designed to deliberately elicit incriminating statements. Hence, the statements made to the GAL were not deliberately elicited and the GAL was not a government agent for purposes of the Sixth Amendment. Therefore, the trial court did not err in allowing Appellant's admission to the GAL.

### Victim's Statement to her Mother

Appellant argues the trial court erred in admitting the testimony of Victim's mother concerning the statements of Victim to her about the sexual assault because they violated the rule against hearsay and Rule 801(d)(1)(D), SCRE as the statements went beyond the time and place of the assault. We disagree.

### A. Issue Preservation

■ At trial, defense counsel objected to the introduction of Victim's statement as hearsay in general. The trial judge overruled the objection. Defense counsel never argued that Victim's statement went beyond the time and place of the assault as provided in Rule 801(d)(1)(D). Because this issue was not raised below, it is not preserved for appellate review.

### B. Hearsay

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute." Rule 802, SCRE. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), SCRE. "A statement that is admissible because it falls within an exception in Rule 803, SCRE, such as the excited utterance exception, may be used substantively, that is, to prove the

truth of the matter asserted." *State v. Sims*, 348 S.C. 16, 20, 558 S.E.2d 518, 520–21 (2002) (citation omitted).

Three elements must be met for a statement to be an excited utterance: (1) the statement must relate to a startling event or condition; (2) the statement must have been made while the declarant was under the stress of excitement; and (3) the stress of excitement must be caused by the startling event or condition. *Id.* at 21, 558 S.E.2d at 521. A court must consider the totality of the circumstances in determining whether a statement falls within the excited utterance exception. *State v. McHoney*, 344 S.C. 85, 94, 544 S.E.2d 30, 34 (2001). The passage of time between the startling event and the statement is one factor to consider, but it is not the dispositive factor. *Sims*, 348 S.C. at 21, 558 S.E.2d at 521. "Other factors useful in determining whether a statement qualifies as an excited utterance include the declarant's demeanor, the declarant's age, and the severity of the startling event." *Id.* at 22, 558 S.E.2d at 521.

In the present case, Victim's statement to her mother related to the startling event of being sexually assaulted by Appellant immediately before her mother returned home. Victim was lying in a fetal position when her mother came to check on her minutes after arriving home. Victim was upset and crying when she told her mother about the abuse; thus, Victim made the statement while under the stress of excitement. Finally, this stress was obviously caused by the sexual assault. The requirements of Rule 803(2), SCRE were satisfied in this case. Victim's statement to her mother was an excited utterance and the trial judge did not err in allowing Mother's testimony.[4] *See also State v. Ladner*, 373 S.C. 103, 644 S.E.2d 684 (2007) (holding a trial judge did not abuse his discretion by admitting a hearsay statement under the excited utterance exception when the statement was made by a two-and-a-half year old girl to her caretakers after

---

4. Even if the statement was not an excited utterance, the admission of this evidence at trial was harmless considering the evidence noted in footnote 1. *See State v. Sherard*, 303 S.C. 172, 175, 399 S.E.2d 595, 596 (1991) ("Error in a criminal prosecution is harmless when it could not reasonably have affected the result of the trial.").

they discovered blood coming from her vaginal area and the statement related to the startling event of a sexual assault).

## CONCLUSION

For the aforementioned reasons, we affirm the decision of the trial court.

WALLER, BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in result only.