**REVISED, JULY 14, 1997**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-50733

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

TERESA BYRD

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Texas

June 23, 1997

Before JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Teresa Byrd challenges her sentence imposed upon revocation of her probation. For reasons that follow, we affirm.

I

In 1994, Teresa Byrd pleaded guilty to distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The probation officer calculated her net offense level as 25 and her criminal history score as 0 ("zero"), resulting in an imprisonment range of 57-71 months under the Sentencing Guidelines. Pursuant to

U.S.S.G. § 5K1.1, however, the Government moved the district court to depart downward from this range because of Byrd's cooperation in a related investigation. The court granted the motion and departed downward to an offense level of 6, which yields an imprisonment range of 0-6 months. In lieu of imprisonment, the court sentenced Byrd to 5 years of probation. As part of the standard conditions of probation, Byrd was prohibited from using controlled substances and forbidden from associating with convicted felons.

In 1996, Byrd's probation officer petitioned the court to revoke Byrd's probation, asserting that her urine specimens had tested positive for controlled substances and that she had associated with convicted felons. After conducting a hearing, the district court revoked Byrd's probation, and pursuant to 18 U.S.C. § 3565 (West Supp. 1997)--the relevant statute governing sentencing upon revocation of probation--sentenced her to 57 months of imprisonment. The court based Byrd's sentence on the pre-downward departure guidelines range of 57-71 months, overruling Byrd's request to be sentenced within the post-departure range of 0-6 months.

Byrd appeals the district court's sentencing decision, contending that the court erred in its decision to sentence her within the pre-departure range of 57-71 months instead of the post-departure range of 0-6 months. Byrd asserts first that application of the current version of 18 U.S.C. § 3565, as amended in September 1994, to her resentencing violates the Ex Post Facto Clause. Under the former version of § 3565, she insists, the court would have

been compelled to base her sentence upon the 0-6 month range. Alternatively, Byrd maintains that, even if application of the current version of § 3565 does not violate the Ex Post Facto Clause, the sentence imposed upon probation revocation must still be within the 0-6 month range under the amended statute.

II

The application of a criminal law violates the Ex Post Facto clause only if: (1) the law is retrospective, *i.e.*, it applies to events occurring before its enactment, and (2) the law disadvantages the offender affected by it. See Miller v. Florida, 482 U.S. 423, 430 (1987). A law is retrospective if it "changes the legal consequences of acts completed before its effective date." Weaver v. Graham, 450 U.S. 24, 31 (1981). Because Byrd failed to raise her Ex Post Facto contention in the district court, and under Fed. R. Crim. P. 52(b), we may address her claim only if (1) there is an error, (2) the error is plain, and (3) the error affects substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc). If all three conditions are satisfied, we may exercise our discretion to correct the error, but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (internal quotation marks omitted; alteration in original).

Assuming, *arguendo*, that the 1994 amendment to § 3565 disadvantages Byrd, we must determine whether Byrd's acts were completed before the effective date of the September 1994 amendment

3

to § 3565. This issue is somewhat complicated, for the conduct underlying Byrd's conviction was completed in 1993 (well before the effective date of the 1994 amendments) but the conduct underlying the probation revocation did not occur until 1996 (substantially after the effective date). If the 57-month sentence imposed upon Byrd's probation revocation (pursuant to the amended § 3565) constitutes the continuing legal consequence of Byrd's original conviction, then the Ex Post Facto Clause is implicated because the acts underlying the conviction did indeed occur before the statute's effective date. If, however, the punishment upon revocation serves as an independent legal consequence of Byrd's probation violation, then the Ex Post Facto Clause is not implicated because the acts underlying the revocation occurred after the effective date. See United States v. Beals, 87 F.3d 854, 858 (7th Cir. 1996); United States v. Reese, 71 F.3d 582, 588 (6th Cir. 1995), cert. denied, 116 S. Ct. 2529 (1996).

We are aware of only one circuit court opinion focusing on the Ex Post Facto ramifications of an amendment to a statute governing probation revocation. See United States v. Female Juvenile, 103 F.3d 14, 17 n.7 (5th Cir. 1996). In Female Juvenile, as here, the defendant committed the underlying crime before the 1994 amendment to § 3565 but violated her probation after such amendment. We stated, albeit in *dicta* and without explanation, that application of § 3565, as amended in 1994, does not violate the Ex Post Facto Clause because the "acts which exposed the defendant to resentencing under § 3565 [*i.e.*, the acts underlying the probation

4

revocation] occurred after the amendment" to that statute.  Id. at 17 n.7.  Because the only court to face the instant issue has concluded that there is no Ex Post Facto violation, we conclude that, if there was error, it was not "clear,"  "obvious," or "readily apparent."  See Calverley, 37 F.3d at 163; see also Olano, 507 U.S. at 734.[1]

III

Having concluded that the district court did not commit plain error by resentencing Byrd under the amended version of 18 U.S.C.

[1]Although Byrd recognizes that, aside from Female Juvenile, there is no case law regarding this precise issue, she asserts that the district court committed plain error because it failed to analogize this case to similar situations involving amendments to statutes governing revocation of parole and supervised release.  It is true, as Byrd asserts, that a significant majority of the circuits have held that application of amended statutes governing revocation of parole or supervised release violates the Ex Post Facto clause when the conduct underlying the conviction occurred before amendments to those statutes but the conduct underlying the revocation occurred after the amendments.  For cases involving parole revocation, see, e.g., Greenfield v. Scafati, 277 F. Supp. 644 (D. Mass.) (three-judge court), aff'd mem., 390 U.S. 713 (1967); Beebe v. Phelps, 650 F.2d 774 (5th Cir. 1981).  For cases involving supervised release, governed by 18 U.S.C. § 3583, see United States v. Beals, 87 F.3d 854 (7th Cir. 1996); United States v. Meeks, 25 F.3d 1117 (2d Cir. 1994); United States v. Paskow, 11 F.3d 873 (9th Cir. 1993); United States v. Parriett, 974 F.2d 523 (4th Cir. 1992).  But see United States v. Reese, 71 F.3d 582 (6th Cir. 1995) (finding no Ex Post Facto problem in applying the amended § 3583).  The policy statements of the Sentencing Guidelines also suggest that violations of probation should be treated as punishment for the initial offense and not the conduct for which probation was revoked.  See U.S.S.G., Ch. 7, Pt. A(3)(b).
  Despite the foregoing, we decline to hold that the district court's error was plain.  While revocation of probation may be closely analogous to revocation of parole or supervised release, we cannot say that any possible error in failing to make such analogy was so conspicuous that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." United States v. Frady, 456 U.S. 152, 163 (1982), quoted in Calverley, 37 F.2d at 163.

5

§ 3565, we now address whether the district court erred in sentencing Byrd pursuant to the pre-downward departure range of 57-71 months.  We review the legality of a criminal sentence *de novo*.  <u>United States v. Fonts</u>, 95 F.3d 372, 373 (5th Cir. 1996).

When a defendant violates the conditions of probation by possessing a controlled substance, the sentencing court is required to "revoke the sentence of probation and resentence the defendant under subchapter A to a sentence that includes a term of imprisonment."  18 U.S.C. § 3565(b)(1) (West Supp. 1997).  The relevant section in subchapter A directs the court to consider "the sentencing range established for . . . the applicable guidelines or policy statements."  18 U.S.C. § 3553(a)(4)(B) (West Supp. 1997).  Byrd contends that it is unclear whether "the sentencing range established for . . . the applicable guidelines" refers to the guidelines range established before the downward departure or whether the phrase refers to the range after the departure.  Because of the alleged ambiguity, Byrd asserts that the "rule of lenity" requires imposition of the shorter sentence, *i.e.*, that based upon the post-downward departure range.

Byrd draws support for her rule-of-lenity argument from <u>United States v. Granderson</u>, 114 S. Ct. 1259 (1994).  In <u>Granderson</u>, the Supreme Court analyzed the resentencing options available under the pre-1994 version of § 3565, which provided that a defendant who violates probation by possessing a controlled substance shall be resentenced "to not less than one-third of the original sentence."  18 U.S.C. § 3565 (Westlaw 1993).  The dispute in <u>Granderson</u>

6

concerned the proper interpretation of the phrase "original sentence." The Government argued that it referred to the term of probation originally imposed upon the defendant (a period of 5 years), whereas the defendant maintained that it referred to the guidelines imprisonment range that could have been imposed upon conviction (a range of 0-6 months). The Court adopted the defendant's position, reasoning that "where text, structure, and history fail to establish that the Government's position is unambiguously correct[,] we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor. Id. at 1267.

In the last footnote of the opinion, the Court also discussed, in *dicta*, application of the rule of lenity to a situation in which the district court had departed downward from the guidelines to impose a sentence of probation--a situation very similar to that which we face today. The Court noted that in such a situation, upon revocation of probation, the proper sentence would be "the maximum of a Guidelines range permitting a sentence of probation." Id. at 1269 n.15. Based on this footnote, Byrd argues that in the instant case, the guidelines range permitting a sentence of probation is a range of 0-6 months, *i.e.*, her sentencing range imposed by the court after the downward departure. Although § 3565 has since been amended, Byrd urges us to apply the rule of lenity because she believes that the current phrasing, "the applicable guidelines," is just as ambiguous as the former term, "original sentence." We disagree.

The textual difference between the current and former statutes

7

is significant. The former act was retrospective in that it referred the sentencing court to a particular sentence actually and previously imposed, *i.e.*, the "original sentence" received by the defendant. By contrast, the current act does not refer to a past sentencing decision; rather, it directs the court to undertake a new sentencing determination based upon the "applicable guidelines." This difference is critical, for the retrospective aspect of the former statute was ambiguous insofar as there were two different sentences that could be termed "original": (1) the potential guidelines imprisonment range and (2) the term of probation actually imposed. See Granderson, 114 S. Ct. 1261-62, 1267. In 1994, however, Congress rectified the ambiguity by eliminating the retrospectivity, and there is nothing ambiguous about the directive to resentence a defendant pursuant to the "applicable guidelines." The dispute about whether the term "applicable guidelines" refers to the pre- or post-downward departure range is irrelevant, for it refers to neither such range. Instead, the term refers to the sentencing guidelines themselves, which are found in the U.S. Sentencing Commission Guidelines Manual. The "applicable guidelines" include, but are not limited to, those listed in: Chapter Two, dealing with the particular offense conduct; Chapter Three, concerning adjustments for the defendant's role in the offense; Chapter Four, regarding the defendant's criminal history; and, of course, Chapter Five, concerning upward and downward departures. If the "applicable guidelines" permit it--as they seem to in the instant case--the

8

sentencing court has discretion, upon resentencing following revocation of probation, either to depart downward or not to depart at all. In no way, however, do the applicable guidelines *compel* the court to depart downward.

This interpretation is perfectly reasonable and does not suffer from the "linguistic anomalies" that prompted the Supreme Court to apply the rule of lenity in Granderson. See 114 S. Ct. at 1264-65. When undertaking the initial sentencing determination, a district court has discretion whether to grant or overrule the government's motion for downward departure. A district court should have the same discretion upon revocation of probation, especially when confronted with a defendant who has failed to abide by the conditions of probation.[2]

IV

For the foregoing reasons, we AFFIRM Byrd's sentence.

AFFIRMED.

---

[2] Finally, our conclusion is supported by the legislative history, sparse though it may be. Even before the Supreme Court decided Granderson, some members of Congress sought to amend § 3565 because the amended statute would make:

consistent the punishment for unlawful possession of a controlled substance . . . by requiring consideration of the nature and seriousness of the violation, and other relevant considerations, instead of arbitrarily varying the sanction according to the length of the initially imposed term of probation.

139 Cong. Rec. S2151 (daily ed. Feb. 25, 1993) (statement of Sen. Thurmond). This statement supports our holding in that it directs a court to reevaluate the length of punishment based upon factors relevant to the crime, instead of looking retrospectively to the length of the original sentence.

9