[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 12, 2007
THOMAS K. KAHN
CLERK

No. 06–13316

D.C. Docket No. 97-00005-CR-11-WCO-2

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

STEPHEN BLAINE MAZARKY,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(September 12, 2007)**

Before DUBINA and BLACK, Circuit Judges, and RESTANI,* Judge.

RESTANI, JUDGE:

Appellant Stephen B. Mazarky ("Mazarky") appeals a sentence of

---

*Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

twenty-eight months of supervised release imposed by the district court following its second revocation of Mazarky's term of supervised release. Mazarky challenges the length of the sentence, arguing that under 18 U.S.C. § 3583[1] the district court was required to reduce the new sentence by the aggregate length of imprisonment already served following his first revocation of supervised release. We vacate the district court's sentence and remand for resentencing.

## BACKGROUND

In 1998, Mazarky was indicted for conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (Count One), possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 2, 3147 (Count Four), and conspiracy to commit various federal offenses, in violation of 18 U.S.C. §§ 2, 371 and 3147 (Count Fifteen). (R1-91 at 1–3, 5, 10–14.) The indictment charged Mazarky with committing the crimes described in Count Four between 1996 and 1997, and those described in Count Fifteen from 1987 until 1998. (Id. at 5, 10.) Pursuant to a plea agreement, Mazarky pled guilty to Counts Four and Fifteen on June 11, 1999, and

---

[1] Because the criminal activity described in Count Four was completed in 1997, and that described in Count Fifteen continued until 1998, the applicable version of the statute is either that of 1997 or 1998. See United States v. Williams, 425 F.3d 987, 988 n.1 (11th Cir. 2001). The relevant portions of the statute are identical in both years. This opinion will therefore cite to the statute as it existed in 1998. See 18 U.S.C. § 3583 (1994 & Supp. V 1999).

was sentenced to concurrent terms of 42 months of imprisonment followed by 36 months of supervised release, in addition to monetary penalties. (R1-537.)

In 2004, following his release from prison, Mazarky admitted to violating the terms of his supervised release. (R1-748.) The district court revoked his supervised release and sentenced him to 10 months of imprisonment followed by 26 months of supervised release, the first 3 months to be served in a halfway house. (Id.) Mazarky did not appeal this sentence, or the original conviction and sentence.

In 2006, following his second release from prison, Mazarky again admitted to violating the terms of his supervised release. (R1-779.) The district court revoked the supervised release and sentenced Mazarky to 8 months of imprisonment, followed by 28 months of supervised release, the first 10 months to be served in a halfway house. Mazarky timely appealed.

## JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction over the final judgment and sentence of the district court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review de novo "the legality of a sentence, including a sentence imposed pursuant to revocation of a term of supervised release." United States v. Pla, 345 F.3d 1312, 1313 (11th Cir. 2003) (quotations and citation omitted). We review issues of

3

statutory interpretation <u>de novo</u>.  <u>United States v. Castro</u>, 455 F.3d 1249, 1251

(11th Cir. 2006).

## DISCUSSION

Mazarky challenges the sentence imposed following the second revocation,

arguing that, under 18 U.S.C. § 3583, the new term of supervised release should

have been reduced by the aggregate length of imprisonment imposed in both

revocations.

Subsections (e) and (h) of 18 U.S.C. § 3583 govern the imposition of a new

term of supervised release following the revocation of a prior term.[2]  Subsection

(e) provides, in relevant part, that:

> [T]he court may . . . revoke a term of supervised release, and require
> the defendant to serve in prison all or part of the term of supervised
> release authorized by statute for the offense that resulted in such term
> of supervised release without credit for time previously served on
> postrelease supervision . . . except that a defendant whose term is
> revoked under this paragraph may not be required to serve more
> than . . . 2 years in prison if such offense is a class C or D felony[3] . . . .

18 U.S.C. § 3583(e)(3).  Subsection (h) permits multiple terms of supervised

release:

---

[2]Subsection (h) was added to the statute in 1994.  <u>See</u> Pub. L. No. 103-322, § 110505, 108 Stat. 1796, 2016–17 (1994).

[3]Mazarky's cocaine offense was a Class C felony, and the conspiracy offense was a Class D felony.

When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

Id. at § 3583(h).[4]

In Williams, this court construed subsection (e) to mean that the maximum term of imprisonment, according to the class of the offense, applied "to the aggregate of the sentences imposed on multiple revocations of supervised release." Williams, 425 F.3d at 988.[5] Under Williams, a district court could therefore revoke supervised release multiple times and reimpose sentences of imprisonment, as long as the total length of the prison terms imposed upon revocation did not exceed the permitted maximums. Williams addressed only post-revocation sentences of imprisonment, however, and did not address whether multiple terms of supervised release must also be reduced by the length of imprisonment imposed

---

[4]"Except as otherwise provided," subsection (b) limits the authorized terms of supervised release to three years for class C and D offenses. Id. at § 3583(b).

[5]"In 2003, Congress added the phrase 'on any such revocation' so that [subsection (e)] now reads 'a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than . . . 2 years in prison if such offense is a Class C or D felony[.]" Williams, 425 F.3d at 989 (quoting 18 U.S.C. § 3583(e)(3) (2005)). Both Williams and the instant case address pre-2003 versions of the statute.

5

on all prior revocations.

Subsection (h) limits the maximum term of supervised release imposed upon revocation to "the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, <u>less any term of imprisonment that was imposed upon revocation of supervised release</u>." 18 U.S.C. § 3583(h) (emphasis added). The statute is silent, however, as to whether the term of imprisonment to be subtracted is that which was imposed upon a single revocation, or the aggregate of all prison terms imposed upon multiple revocations. This is a question of first impression in this Circuit, but has been addressed in the relevant legislative history, and in the Seventh, Eighth, and Second Circuits.

In the explanation of an earlier bill containing language nearly identical to subsection (h), the phrase "any term of imprisonment" is described as the aggregate of all prison terms served in prior revocations:

> For example, in the case of a Class C felony for which the maximum supervised release term is three years, a defendant who is revoked and re-imprisoned for 18 months could be ordered to serve as much as 18 additional months on supervised release (36-month maximum term of supervised release minus 18 months imprisonment equals 18 months possible re-release supervision). If the same defendant was again revoked, he could be re-imprisoned for not exceeding six months (24-month cap minus 18 months previously-served imprisonment equals 6 months allowable imprisonment) and if so imprisoned, could not

6

thereafter be placed on supervision (because the two-year imprisonment cap would have been reached).  Thus, under [subsection (h)], a defendant would always be credited for incarceration time against both the cap on re-imprisonment and the maximum authorized period of supervised release.

137 Cong. Rec. S7769, S7772 (daily ed. June 13, 1991) (emphasis added).

United States v. Beals, 87 F.3d 854 (7th Cir. 1996), overruled in part on other grounds by United States v. Withers, 128 F.3d 1167 (7th Cir. 1997), followed this approach in holding that subsection (h) could potentially disadvantage a defendant whose crimes were completed prior to its enactment in 1994.  Beals explained that:

Prior to Subsection (h), a defendant could serve only one term of supervised release, and thus only once "lose" credit for time served prior to the revocation.  After Subsection (h), a defendant can serve multiple terms and thus potentially "lose" multiple periods of time after the initial revocation . . . .

Beals, 87 F.3d at 857 (citing 137 Cong. Rec. S7769, S7771).  In Withers, the Seventh Circuit overruled Beals in part on the grounds that the practical effect of subsection (h) did not "produce[ ] a sufficient risk" of increased punishment to violate the Ex Post Facto Clause when applied retroactively.  Withers, 128 F.3d at 1171–72.  Withers maintained, however, the understanding that subsection (h) allows a court to:

impose the same punishment as under [subsection (e)(3)] . . . [but]

7

> also permit[s] a court to impose a sentence (for the same time period as under [subsection (e)(3)]) that includes a combination of prison time and additional supervised release. . . . Under either law, the defendant is subject to the same total amount of restraint. . . . The new law simply permits a court to fill this time with a mixed sentence of imprisonment and supervised release rather than a sentence consisting solely of imprisonment.

Withers, 128 F.3d at 1170.  Although Beals and Withers primarily addressed the possibility of harsher prison sentences as a result of retroactive application of subsection (h), they also acknowledge that credit for incarceration time applies against both the maximum prison term and the maximum permitted supervised release.

Similarly, United States v. Brings Plenty, 188 F.3d 1051 (8th Cir. 1999), cites to Beals and the above-cited legislative history in support of its holding that "'any term of imprisonment' includes the prison term in the current revocation sentence together with all prison time served under any prior revocation sentence(s)."  Brings Plenty, 188 F.3d at 1053.  Brings Plenty concluded that, under subsection (h), a term of supervised release imposed upon revocation must be reduced by the length of imprisonment served on all prior revocations.  Id. at 1053–54 (citing, e.g., United States v. Walker, 32 F. Supp. 2d 1305, 1306 (M.D. Ala. 1998) ("Pursuant to § 3583(h), the court will also be authorized to impose an additional term of supervised release . . . minus the sum of the periods of re-

8

imprisonment imposed as punishment for the violations of supervised release.")).

The Second Circuit in <u>United States v. Merced</u>, 263 F.3d 34 (2d Cir. 2001), followed the approaches of <u>Beals</u> and <u>Brings Plenty</u> in holding that "§§ 3583(e)(3) and (h) provide for aggregated, rather than per violation, statutory maximum terms of imprisonment for violations of supervised release." <u>Merced</u>, 263 F.3d at 37. Like <u>Williams</u>, <u>Merced</u> focused on the question of whether prior revocation terms of imprisonment count in the aggregate against a new prison term imposed upon subsequent revocation of supervised release. <u>Merced</u> also stated, however, that subsection (h) allows for "the imposition of an additional term of supervised release . . . only if the defendant had served less time in prison for previous supervised release violations than the maximum authorized period of re-imprisonment." <u>Id.</u> at 37–38 (citing 137 Cong. Rec. at S7771). Although <u>Merced</u> measures the credit for prior terms against the maximum term of imprisonment, it emphasizes that supervised release is similarly limited by the statute, and rejects the possibility of "an endless cycle of consecutive terms of imprisonment and supervised release based on a single underlying offense." <u>Id.</u> at 37.

The relevant legislative history and case law from other circuits indicate that subsection (h) was intended to provide credit for the aggregate of prison terms

9

served on prior revocations toward the maximum amount of supervised release permitted by statute. Upon multiple revocations, subsection (h) authorizes the imposition of an additional term of supervised release, up to the statutory maximum, "less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). Accordingly, we hold that, under subsection (h), the maximum allowable supervised release following multiple revocations must be reduced by the aggregate length of any terms of imprisonment that have been imposed upon revocation.

It should be noted that this conclusion does not conflict with our prior holdings in United States v. Gresham, 325 F.3d 1262 (11th Cir. 2003), and Pla, 345 F.3d at 1312. Gresham held that subsection (e)(3) does not provide credit "for pre-revocation time served on supervised release. . . . [T]he aggregate of pre-revocation and post-revocation supervised release terms may exceed the maximum length of supervised release [under subsection (b)]."[6] Gresham, 325 F.3d at 1268. Gresham determined that credit does not apply toward the maximum term of supervised release for supervised release served prior to revocation; it did not address, however, the question of whether credit applies for post-revocation terms

---

[6]Gresham found that subsection (h) was not applicable to defendants whose underlying offenses were completed before its enactment in 1994. Gresham, 325 F.3d at 1265.

10

of imprisonment. Similarly, Pla held that subsection (h) does not provide credit for time previously spent on supervised release prior to revocation. Pla, 345 F.3d at 1314. Pla explains that "[t]he only credit that subsection (h) clearly enumerates is time served in prison post revocation of supervised release." Id. Neither Gresham nor Pla address the question of whether credit applies for aggregated post-revocation terms of imprisonment; therefore, neither is controlling in the instant case.

Finally, the government argues that, under United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001) (en banc), abrogated in part by United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir. 2005), the aggregation of prior revocation sentences should have no effect on Mazarky's sentence of supervised release because "a term of supervised release imposed upon conviction of an offense in violation of § 841(a)(1) . . . may exceed the three-year cap established in 18 U.S.C. § 3583(b)."[7] (Appellee's Br. 10 (citing Sanchez, 269 F.3d at 1286–88 (holding that the length of supervised release for an offense under § 841(b) is controlled by the terms of § 841, and not by the three-year limitation in § 3583(b)(2)[8]).) It is not

_____

[7]The government argues that "the concept of credit [therefore] makes no sense, because there is no maximum term of supervised release against which the credit may apply." (Appellee's Br. 18.)

[8]Sanchez noted that "'the supervised release terms authorized by Congress for drug
(continued...)

11

clear that the government timely raised this argument before the district court.

Even if the argument is not waived, the factual development of the instant case

requires us to consider the maximum term of Mazarky's supervised release as

three years.

At all stages of the proceedings, Mazarky's term of supervised release was

treated as a maximum of three years. In the plea agreement, the parties stated that

Count Four carried "a term of supervised release of from two to three years," and

Count Fifteen carried "a term of supervised release of at least 2 years." (R1-460.)

In the plea hearing, Mazarky was advised that "two to three years' supervised

release" would apply for Count Four, and, "[a]s to Count 15 . . . the maximum

is . . . two years' supervised release . . . ." (R5-19.) In the initial sentencing, the

district court imposed a three year term of supervised release. (R1-537.) Upon the

first revocation, the district court again treated the term of supervised release as a

maximum of 36 months, imposing 10 months of imprisonment followed by 26

months of supervised release.[9] (R1-748.) In the second revocation hearing, the

---

[8](...continued)
offenses, including section 841, were added in the same statute that amended section 3583(b) by adding the introductory phrase 'Except as otherwise provided.'" Id. at 1287 (quoting United States v. Eng, 14 F.3d 165, 172–73 (2d Cir. 1994)).

[9]As explained above, from a maximum term of 36 months supervised release, the court would be required to subtract the term of imprisonment imposed upon revocation, which resulted
(continued...)

government argued that the court should impose a total term of 36 months, proposing a sentence of 10 months of imprisonment and 26 months of supervised release.[10] (R2-10.) The district court sentenced Mazarky to 8 months of imprisonment and 28 months of supervised release, for a total of 36 months. (Id. at 13.) In oral argument before this Court, the government acknowledged that it is still not seeking a term in excess of three years, and claimed only that the post-Sanchez possibility of such a term renders meaningless the application of "credit."

In the instant case, it is clear that Mazarky's term of supervised release was treated by all parties as a maximum of three years throughout the course of the proceedings. The government recommended a plea sentence in which Mazarky was plainly advised that he would face a maximum term of three years supervised release, and maintained upon each revocation that such a term would apply. In

---

[9](...continued)
in a revocation sentence of 10 months of imprisonment and 26 months of supervised release.

[10]In the second revocation hearing, the Assistant U.S. Attorney told the court that:

Two years ago you revoked [Mazarky's] term of supervised release, [and] sentenced him to . . . [a] total of 36 months. I think you still have . . . 36 months of supervised release to deal with . . . . because (h) says the length of such term of supervised release imposed following revocation shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term, which is three years. . . . [W]hatever time in custody you give him you've got to reduce the three years by that.

(Revocation Hr'g Tr. 8:15–9:25, May 31, 2006.)

13

order to preserve sufficient notice to the defendant, we must therefore consider

Mazarky's maximum term of supervised release to be three years.

## CONCLUSION

Accordingly, the sentence imposed by the district court is **vacated** and

**remanded** to the district court for resentencing. Credit must be applied toward

Mazarky's maximum term of 36 months of supervised release for 10 months of

imprisonment served on the first revocation and 8 months of imprisonment served

on the second revocation. Thus, Mazarky's sentence should be 8 months of

imprisonment followed by 18 months of supervised release.