[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12160
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00022-CR-5-RS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELIJAH JAMES CHISOLM,
a.k.a. Jamie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 23, 2010)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Elijah James Chisolm appeals his convictions and sentences for conspiracy

to distribute and possession with intent to distribute cocaine base[1]. He first argues

that there was insufficient evidence presented at trial to sustain his convictions.

Second, Chisolm argues that the district court improperly admitted, under Federal

Rule of Evidence 404(b), testimony regarding his prior bad acts. Finally, Chisolm

argues that the district court erred in sentencing him to a term of life imprisonment,

based upon a sentencing enhancement under 21 U.S.C. § 851(a).

## I.      Sufficiency of the evidence

We view the evidence in the light most favorable to the government to

determine if it was sufficient to support Chisolm's convictions. United States v.

Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005).

### A.      Count 1: Conspiracy (21 U.S.C. § 846) and Possession with the Intent to Distribute (21 U.S.C. § 841(a)(1))

To sustain a conviction for conspiracy for possession with intent to

distribute a controlled substance, the government must prove beyond a reasonable

doubt that (1) an illegal agreement to possess a controlled substance with the intent

---

[1] Chisolm was convicted of the following counts: (1) conspiracy to distribute and possession with intent to distribute cocaine base more than 50 grams of cocaine base with Jonathan Cellen Bolware, Floyd Kimball, and "other persons," between April 17, 2006, and June 3, 2008, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(iii) ("Count 1"); (2) distribution of more than 50 grams of cocaine base on July 20, 2006, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) ("Count 2"); (3) 2 counts of distribution of more than 5 grams of cocaine base on April 10, 2008, and April 11, 2008, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) ("Counts 5 and 6"); and (4) distribution of cocaine on April 24, 2008, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 7").

to distribute it existed; (2) the defendant knew of it; and (3) the defendant, knowingly and voluntarily joined it. 21 U.S.C. §§ 841(a)(1), 846; see Hernandez, 433 F.3d at 1333. "To satisfy this burden, the government need not prove that the defendant knew all of the details or participated in every aspect of the conspiracy. Rather, the government must only prove that the defendant knew the essential nature of the conspiracy." United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005) (quotation and alterations omitted). "Because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." United States v. Arias-Izquierdo, 449 F.3d 1168, 1182 (11th Cir. 2006) (citation omitted). "While the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement, an agreement to distribute drugs may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to a purchaser." Thompson, 422 F.3d at 1292 (citation, quotation marks, citation, and alteration omitted).

Here, the evidence was sufficient for a reasonable jury to find Chisolm guilty beyond a reasonable doubt of conspiracy to distribute and possession with intent to distribute more than 50 grams of cocaine base with Bolware, Kimball, and "other persons," between April 17, 2006, and June 3, 2008 beyond a reasonable

3

doubt. The evidence established that Chisolm, Bolware, Kimball, and others had conspired to do so as: (1) Bolware and Chisolm were cousins and partners, who pooled their money to buy powder cocaine and split their profits equally; (2) Chisolm introduced Bolware to his cocaine suppliers in Dothan and Atlanta; (3) Chisolm and Bolware would travel together to buy the cocaine with Bolware transporting the money and cocaine in his car and Chisolm driving a surveillance car to look out for law enforcement; (4) Bolware would "cook" the powder cocaine into cocaine base (i.e. crack cocaine) in Kimball's shed on Bolware's mother's property while Chisolm was present; (5) Chisolm and Bolware paid Kimball with cocaine base for the use of his shed and his assistance in cleaning and hiding the glassware used to "cook" the cocaine into base; (6) Kimball tested the quality of the cocaine base for Chisolm and Bolware; (7) Bolware sold cocaine powder and base and maintained custody of the money; (8) Kimball delivered drugs to customers and would stand guard when Chisolm delivered drugs; (9) Chisolm counted the money; and (10) Chisolm would also deliver drugs to customers.

The evidence established that more than 50 grams of cocaine base was involved in the conspiracy because: (1) for each drug purchase Bolware and Chisolm made from a dealer named Alton over the course of six or seven months,

4

they purchased approximately one-half of a kilogram of cocaine to split; (2)

Bolware and Chisolm also purchased cocaine powder from an individual named

"B" on 20 to 40 different occasions, and Bolware estimated that they received over

50 kilograms of cocaine from "B"; and (3) McCloud testified that on

approximately 20 occasions from January through June 2006, he would buy 4 or 5

crack cocaine "cookies," which were approximately 21 to 23 grams each, from

Chisolm and Bolware.

This evidence was sufficient for a reasonable jury to find beyond a

reasonable doubt that Chisolm conspired to distribute and possess with intent to

distribute more than 50 grams of cocaine base between April 17, 2006, and June 3,

2008. See Hernandez, 433 F.3d at 1333; Thompson, 422 F.3d at 1292 (holding

that sufficient evidence supported conspiracy because the government established

"the existence of a continuing relationship between Mr. Stratton and Ms.

Thompson in which Mr. Stratton would supply Ms. Thompson cocaine, the bulk of

which she would distribute to customers").[2] Because the evidence was sufficient

---

[2] Chisolm submits that Bolware's testimony was incredible as matter of law because Bolware testified that he and Chisolm on occasion would drive to Dothan, which was approximately 100 miles away, once or twice a day and yet would still have time to sell drugs. However, Bolware testified that he rarely went to Dothan twice in one day and that he sometimes would have a buyer lined up to give drugs to immediately upon his return. This testimony is not incredible as matter of law because driving 400 miles in a day and dropping something off to someone who was waiting for it is not an impossible event. See United States v. Thompson, 422 F.3d 1285, 1291-92 (11th Cir. 2005) (citation and alteration omitted) (holding that a witness's testimony is "incredible as a matter of law" if the witness testifies "as to facts

for a reasonable jury to find Chisolm guilty of Count 1 beyond a reasonable doubt, this Court should affirm Chisolm's conviction as to Count 1.

**B. Counts 2, 5, 6, and 7: Distribution of a Controlled Substance (21 U.S.C. § 841)**

Chisolm also was charged with (1) distribution of more than 50 grams of cocaine base on July 20, 2006 (Count 2); (2) 2 counts of distribution of more than 5 grams of cocaine base on April 10, 2008, and April 11, 2008 (Counts 5 and 6); and (3) distribution of cocaine on April 24, 2008 (Count 7).

With respect to Count 2, the evidence presented at trial established that: (1) on July 20, 2006, to set up a controlled buy as part of his cooperation with law enforcement, Jarvarus Taylor telephoned Chisolm to buy cocaine base because Chisolm had been and was his source of cocaine base; (2) Chisolm told him to call Bolware, who Taylor did not know prior to that point; (3) later that day, Taylor made a controlled buy of cocaine base at Bolware's mother house; and (4) the cocaine base recovered was 55.2 grams and 39% pure. This was sufficient for the jury to conclude beyond a reasonable doubt that Chisolm distributed more than 50 grams of cocaine base on July 20, 2006.

The evidence presented at trial with respect to Counts 5 (distribution of more

---

that the witness could not have possibly observed or events that could not have occurred under the laws of nature."

6

than 5 grams of cocaine base on April 10, 2008), 6 (distribution of more than 5 grams of cocaine base on April 11, 2008), and 7 (distribution of cocaine on April 24, 2008) was sufficient to sustain Chisolm's convictions. Dewayne Lamar Johnson, who was cooperating with law enforcement, set up three controlled buys of cocaine base with Chisolm. On April 10, 2008, Johnson made a controlled buy, which was recorded on audio and video, of 19.6 grams of 37.2% pure cocaine base for $900 from Chisolm. On April 11, 2008, Johnson made another controlled buy, which was recorded on video, of 20.5 grams of 41.3% pure cocaine base for $1,350 from Chisolm. Deputy Ramie, who had seen Chisolm on 20 to 25 other occasions, identified Chisolm as the individual in the video of the incidents on April 10 and 11 with "100 percent" certainty. On April 27, 2008, Johnson made his third controlled buy of 12.1 grams of 60.8% pure cocaine base from Chisolm. Though this third buy was not recorded, Officer Retherford testified that he was surveilling Johnson during the buy and saw Chisolm following Johnson to Johnson's house in their respective vehicles and Deputy Ramie saw Chisolm arrive at Johnson's house, and enter Johnson's car for a short while before returning to his car. This was sufficient for the jury to conclude beyond a reasonable doubt that Chisolm distributed more than 5 grams of cocaine base on April 10, 2008, and April 11, 2008 (Counts 5 and 6) and distributed of cocaine base on April 24, 2008.

7

## II.    Admission of testimony

We review Chisolm's contention that the district court erred in admitting the testimony of Johnson, Taylor, Kelvin Smith, and Terry McCloud as "prior crimes and bad acts" under Federal Rule of Evidence 404(b) for an abuse of discretion. United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009).

> Federal Rule of Evidence 404(b) provides that
>
> evidence of <u>other</u> crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

Fed. R. Evid. 404(b) (emphasis added).

Here, the district court did not abuse its discretion in allowing Johnson, Taylor, Smith, and McCloud to testify because their testimony was not admitted under Rule 404(b) as their testimony was admitted to prove that Chisolm was guilty of the charges for which he was being tried.

## A.    Johnson

The district court did not admit Johnson's testimony under Rule 404(b), but instead admitted it as evidence that Chisolm committed the crimes for which he was being tried because Johnson testified that starting in May 2007, when he was released from prison and during the relevant time frame of the charged conspiracy (April 17, 2006, through June 3, 2008), he purchased crack cocaine "eight or nine

8

times" from Chisolm. Johnson testified that, after he began cooperating with law enforcement, he attempted to make three controlled buys from Chisolm, which he would set up by calling Chisolm. Also, Johnson's testimony about the three controlled buys with Chisolm on April 10, 11, and 24, 2008 were relevant to establish that Chisolm was guilty of Counts 5, 6, and 7.

**B.    Taylor**

The district court did not abuse its discretion in admitting Taylor's testimony because Taylor's testimony concerned events occurring within the time frame of the conspiracy and was relevant to establish that Chisolm was guilty of Counts 1 and 2 (the July 20th controlled buy) as Taylor testified that one of the controlled buys in which he, Chisolm, and Bolware participated in occurred on July 20, 2006.

**C.    Terry McCloud**

McCloud testified that: (1) on approximately twenty occasions he had purchased four to eight "cookies" of cocaine base from Chisolm and Bolware; (2) some of his purchases with Chisolm at Bolware's mother's property were made after McCloud was released from custody in April 2006; (3) some of his purchases with Chisolm occurred in the six-month period prior to June 22, 2006, when McCloud taken into custody again; (4) both Chisolm and Bolware were there for the majority of his purchases; and (5) that Chisolm would count the money as he

9

stood next to Bolware, who would be cooking the powder cocaine into cocaine base. Though some of the cocaine base purchases may have occurred prior to the alleged start date of the conspiracy (April 17, 2006), the district court did not abuse its discretion in admitting McCloud's testimony as relevant to establish the formation and existence of the conspiracy on and after April 17, 2006, respectively.

### D. Smith

The district court did not abuse its discretion in admitting Smith's testimony as it was relevant to establishing that Chisolm was conspiring with Bolware to sell cocaine base during the charged time period of the conspiracy in Count 1 (April 17, 2006, through June 3, 2008). Smith testified that after he was released from prison in June 2006, he purchased cocaine base from Chisolm and Bolware behind Bolware's grandmother's house. Because the testimony concerned events relating to charged conduct in the indictment and was not admitted under Federal Rule of Evidence 404(b), the district court did not err in admitting it.

Therefore, because none of the witnesses' testimony was admitted under Rule 404(b), and the testimony was relevant to establish that Chisolm was guilty of the crimes for which he was being tried, the district court did not abuse its discretion in allowing the testimony. See Brannan, 562 F.3d at 1306.

10

## III.  Sentencing Enhancement

We review Chisolm's contention that the district court erred in applying a sentencing enhancement, which resulted in his life sentence, de novo.  United States v. Mazarky, 499 F.3d 1246, 1248 (11th Cir. 2007).  In this case, the district court did not err in sentencing Chisolm to an enhanced sentence of life imprisonment because he had three qualifying prior felony drug convictions that triggered the enhancement.  See 21 U.S.C. § 841(b)(1)(A) (life imprisonment enhancement is available if the defendant has two or more prior convictions for a "felony drug offense" that are final and the defendant has violated subsection (b)(1)(A)).[3]  Id.  Chisolm's challenge also fails because he failed to challenge the validity of his prior state convictions in 1994[4] and 1998[5] within the required five-year time period.  21 U.S.C. § 851(e) (defendant may not challenge "the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction"); see also United States v. Williams, 954 F.2d 668, 673 (11th Cir. 1992) (holding that § 851(e)'s

---

[3] As discussed previously, sufficient evidence supports Chisolm's convictions under 21 U.S.C. § 841.  The government may seek the enhanced sentence of life imprisonment if it files an information with the district court setting out the prior convictions on which it will rely, which was done in this case.  21 U.S.C. § 851.

[4] Chisolm was convicted of possession of a controlled substance.

[5] Chisolm was convicted of possession of a controlled substance with intent to distribute and possession of paraphernalia.

11

five-year limitation is not unconstitutional because it is "reasonably tailored to impose enhanced sentences on recidivists"). In any event, Chisolm's argument that his prior state court convictions do not qualify as predicate offenses fails on the merits. See United States v. Hansley, 54 F.3d 709, 717-18 (11th Cir. 1995) (holding that defendant's prior felony convictions in Georgia state court for drug-related conspiracy and simple possession qualified as predicate prior felony drug offenses for § 841(b)(1)(A) because under the plain language of the statute, "felony drug offense" includes *any* criminal conduct relating to narcotics, including simple possession, which a state has proscribed as a felony.") (emphasis in original).[6]

**AFFIRMED.**

---

[6] Chisolm's remaining challenges to his sentence—that it violates the Eighth Amendment and that the government must prove the prior convictions beyond a reasonable doubt—are similarly meritless. United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992) (holding that the mandatory life-imprisonment enhancement provision in § 841 does not violate the Eighth Amendment); United States v. Steed, 548 F.3d 961, 979 (11th Cir. 2008) (holding that the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), that "the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence" remains binding precedent).