[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10264
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00446-TCB-LTW-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HOMER LARIOS,
a.k.a. Hummer,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(November 22, 2010)

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Homer Larios appeals his convictions and 240-month sentence. Larios was

tried and convicted with other defendants for activities relating to a drug trafficking organization operated out of an Atlanta business.[1]  Larios raises four issues on appeal.  After a thorough review of the record and briefs, we affirm his convictions and sentence.

## I.

Larios first asserts that the district court abused its discretion by allowing admittedly inaccurate transcripts to be sent into deliberations with the jury.  This case involved a significant number of recorded conversations in Spanish.  Accordingly, the government submitted transcripts of the conversations, in addition to the audio, to assist jurors in the deliberative process.  During direct examination, a government witness admitted that one statement in one transcript misidentified Larios as the speaker.  The statement occurred during a conversation that focused on arranging a meeting between members of the drug trafficking organization and illusory drug associates of an undercover Federal Bureau of Investigation ("FBI") agent.  It was actually made by Larios's co-defendant brother, Ricardo Larios-Trujillo.  Larios-Trujillo made the statement while explaining why his brother, Larios, would make the trip instead of him.

---

[1]  Larios was convicted of conspiracy to possess five or more kilograms of cocaine, with intent to distribute, and attempted possession of five or more kilograms of cocaine, with intent to distribute.  21 U.S.C. § 841 (a)(1), (b)(1)(A)(ii); 21 U.S.C. § 846.

Specifically, the transcript mistakenly attributed the following to Larios:

> And that's why I told this guy, [confidential informant],
> and I told him, 'Look, [confidential informant], it seems
> very hard to me, you know, just — because right now,
> because my wife is working, it's a little bit hard for me.'
> I said, 'Talk to [undercover agent], or–.' And that was
> when he told me, 'Oh, [confidential informant] sent me
> here.' Because I'm giving you my word. He's my
> brother; we are like two blood brothers, you know what I
> mean? We are brothers.

We review the evidentiary rulings of the trial judge for clear abuse of discretion. *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). We reverse such decisions only if there is a reasonable likelihood that the ruling affected the defendant's substantial rights. *Id*. "[W]here an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *Id*.

For transcripts to be admitted into evidence, "there must be some evidence that the transcripts are accurate—that the words are accurately reproduced and the voices accurately identified." *United States v. Rochan*, 563 F.2d 1246, 1251 (5th Cir. 1977).[2] "[T]ranscripts are evidence admissible to assist the jury in identifying speakers, and . . . absent anything more than a generalized claim of prejudice, [this

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as precedent all rulings of the former Fifth Circuit handed down prior to October 1, 1981.

Court] will not find error in the transcripts being allowed in the jury room."

*United States v. Nixon*, 918 F.2d 895, 901 (11th Cir. 1990) (internal citations omitted).

Even assuming that the district court abused its discretion by allowing the jury to take knowingly inaccurate Spanish-to-English transcripts into deliberations,[3] we find that the other evidence presented provided sufficient evidence of guilt and that the precautionary steps taken during trial minimized any effect. Therefore, any error was harmless and did not infringe upon Larios's substantial rights.

The government's evidence was sufficient to convict Larios and overcome any slight prejudice he might have suffered from the admission of the faulty transcript. Larios contends that the government offered only two pieces of

---

[3] The transcript misidentified Larios as the speaker on only one occasion. The government admitted this mistake and two other speaker-identification mistakes in other transcripts relating to other defendants. The statement mistakenly attributed to Larios in this case, even if it had gone unnoticed, cannot be considered overly prejudicial. Nevertheless, we question the practice of allowing *any* knowingly inaccurate transcript that misidentifies a speaker to be allowed into the jury room during deliberations. Such a mistake, *when conceded by the government*, could be easily corrected through the submission of an updated transcript. Though a "district court need not find that the transcript is perfectly accurate prior to its admission," it seems that when an imperfection is recognized by all, corrective action should be taken. *See United States v. Hogan*, 986 F.2d 1364, 1376 (11th Cir. 1993). This concern is *not applicable to situations where the contents of a transcript are disputed*. We have established precedent in this Court that creates a clear process for resolving conflicts between parties who disagree on the contents of transcripts. *See, e.g., United States v. Hogan*, 986 F.2d 1364, 1376 (11th Cir. 1993).

evidence against him: (1) a planned trip to Miami, Florida and (2) his presence at the location of the arrests during the controlled sale of cocaine. The record reveals something different.

The government presented sufficient evidence to convict Larios notwithstanding the single sentence mistakenly attributed to him, especially in light of the fact that the statement was not incriminating. The government introduced recorded telephone conversations involving Larios and implicating him in the drug organization. One such conversation took place the morning of Larios's arrest between Larios and the confidneital informant who ultimately executed the controlled drug exchange that led to his arrest. Larios asked if the informant had already gotten "it," which the informant testified referred to several kilograms of cocaine. Additionally, that same confidential informant testified that he personally witnessed Larios sell cocaine. Furthermore, FBI agent Anibal Gonzalez testified that he engaged in multiple discussions with Larios and his co-defendant brother regarding making a trip to Miami, Florida to meet the agent's fictitious drug associates. This evidence, unrelated to the single errantly attributed statement, allowed the jury to convict Larios.

The actions taken by the government and trial court to minimize any unjust effect are just as significant as the other incriminating evidence introduced against

5

Larios. First, the government elicited from a witness that the mistakenly attributed statement was an error. Therefore, the jury was made aware of the problem and it cannot be assumed that it tainted their deliberations. More importantly, the district court instructed the jury on the use of all transcripts during deliberations. Specifically, the trial judge informed the jury:

> *you are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine* based on your own evaluation of the testimony you have heard concerning the preparation of the transcript and from your own examination of the transcript in relation to your hearing of the tape recording itself as the primary evidence of its own contents.

(emphasis added). In combination, the government's acknowledgment of the identification error and the court's instruction to the jury to disregard inaccurate transcripts support the conclusion that the jury gave no weight to the statement mistakenly attributed to Larios. In light of the other evidence, the noted mistake is a relatively insignificant piece of the puzzle in the government's case against Larios, especially when one realizes that the statement is not particularly incriminating.

Despite his contention that without this statement the government's case is tenuous, we conclude that any harm arising from the admission of the inaccurate

transcript did not affect Larios's substantial rights.

## II.

Larios next argues that the application of a mandatory minimum sentence, prescribed by 21 U.S.C. §§ 841(b)(1) and 851, violated his Fifth, Sixth, and Eighth Amendment rights. He argues that, pursuant to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), this Court should not allow the imposition of mandatory minimum sentences if they result in a sentence greater than necessary to meet the sentencing goals found in 18 U.S.C. § 3553(a).[4]

We review de novo the legality of criminal sentences. *United States v. Mazarky*, 499 F.3d 1246, 1248 (11th Cir. 2007). This includes constitutional challenges to a sentence. *United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir. 2005). We are, however, bound to follow precedent unless it has been overruled by this Court sitting en banc or the Supreme Court. *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (per curiam) (citation omitted).

We have previously considered Larios's argument. *See United States v. Castaing-Sosa*, 530 F.3d 1358, 1361 (11th Cir. 2008) (per curiam). There, in

---

[4] Larios acknowledges in his brief that this Court "has previously held that mandatory minimum sentences for drug offenses do not conflict with the trial court's statutory obligation to impose a reasonable sentence pursuant to 18 U.S.C. § 3553(a)."

considering whether § 3553(a) allows for a district court to sentence below a mandatory minimum, we stated that "§ 3553(a) plainly does not confer upon the district court the authority to sentence a defendant below the statutory mandatory minimum based on its consideration of the § 3553(a) factors." *Castaing-Sosa*, 530 F.3d at 1361.

Accordingly, we find that the district court did not err by imposing a sentence consistent with the mandatory minimum.[5]

### III.

Larios challenges the constitutionality of 21 U.S.C. §§ 841 and 851, alleging that the statutes violate the due process, notice, and jury trial rights located in the Fifth and Sixth Amendments. He believes these statutes are unconstitutional, despite acknowledging Supreme Court precedent to the contrary, because they allow for enhanced sentencing based on prior convictions that are not proven to the jury beyond a reasonable doubt. In his case, Larios's mandatory minimum sentence was raised from 10 years to 20 years because of his prior convictions.

---

[5] We acknowledge Larios's contention that there may be tension between *Booker,* 543 U.S. 220, 125 S. Ct. 738, and *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002), as previously noted by a number of courts. Only the Supreme Court, however, may overrule its previous decisions.

Prior convictions are not subject to the general rule that any fact that increases a defendant's maximum sentence must be proven to the jury beyond a reasonable doubt. *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27, 118 S. Ct. 1219, 1222 (1998). The Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), did not overrule *Almendarez-Torres*. *See, e.g.*, *United States v. Mareseille*, 377 F.3d 1249, 1257–58 (11th Cir. 2004). "Though wounded, *Almendarez-Torres* still marches on and we are ordered to follow. We will join the funeral procession only after the Supreme Court has decided to bury it." *United States v. Gibson*, 434 F.3d 1234, 1247 (11th Cir. 2006) (footnote omitted). As the Supreme Court has yet to cast *Almendarez-Torres* into the forgotten jurisprudential abyss, it continues to have a pulse.

Though Larios contends that "*Almendarez-Torres* and *Harris* are inconsistent with *Apprendi* and the Supreme Court's now-firmly established Sixth Amendment jurisprudence," it is squarely within the province of the Supreme Court to reach such a conclusion. Accordingly, we must conclude that the district court correctly applied binding precedent in sentencing Larios.

IV.

Finally, Larios claims that 21 U.S.C. §§ 841 and 851 violate the constitutionally mandated separation of powers between branches of the federal

government.  He believes the statutes unconstitutionally (1) unite the sentencing power (granted to the judiciary) and the prosecuting power (entrusted to the executive) in the executive branch; and (2) delegates the power to create sentencing parameters.

We have held that the discretion necessarily given to prosecutors under § 851 does not violate the constitutional separation of powers.  *See United States v. Cespedes*, 151 F.3d 1329, 1330 (11th Cir. 1998) ("[Defendant] asserts that 21 U.S.C. § 841 *et. seq.* is an unconstitutional delegation of legislative authority to the executive branch because it places in the hands of the prosecutor unbridled discretion to determine whether or not to file a sentencing enhancement pursuant to 21 U.S.C. § 851 without providing any 'intelligible principle' to guide that discretion.  We disagree . . . .").[6]

Once again, Larios's argument is not persuasive in light of our prior rulings. Each of his sentencing arguments are foreclosed by our precedent and that of the United States Supreme Court.  Accordingly, we affirm his 240-month sentence.

**AFFIRMED.**

---

[6] Larios acknowledges this binding precedent and "respectfully maintains [this] argument for purposes of further review."